**COORS PORCELAIN COMPANY,**
**Appellant,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Appellee.**

**No. 21–70.**

United States Court of Appeals,
Tenth Circuit.

July 31, 1970.

Gene W. Reardon, Denver, Colo., for appellant.

Leonard J. Henzke, Atty., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and William Massar, Attys., Dept. of Justice, Washington, D. C., with him on the brief) for appellee.

Before LEWIS, Chief Judge, PICKETT, Senior Judge, and SETH, Circuit Judge.

SETH, Circuit Judge.

This is an appeal from a decision of the Tax Court, 52 T.C. 682, affirming the Commissioner's disallowance of claimed deductions for obsolescence and depreciation.

In 1960 the taxpayer, Coors Porcelain Company, obtained a contract from the Atomic Energy Commission (AEC) to produce ceramic nuclear fuel elements to be used in supersonic low altitude flying reactor missiles. In order to produce the nuclear fuel elements, it was necessary for the taxpayer to construct a special building designed and built in accordance with specifications provided by the AEC. The rigid frame building contains a depressed area with a high bay, a partial second floor, and is constructed with outer walls of concrete tilt-up slabs, concrete floors, and a metal roof. The building had an unusually large ventilation-air cleaning system and a special waste collection system for poisonous and corrosive materials. This "Fuel Elements Building" was built in 1961 at a cost to taxpayer of $464,072.82, and continued in use until 1964 when the AEC cancelled the contract because of a treaty entered into between the United States and Russia. In that year the taxpayer was required to completely terminate production of the nuclear fuel elements. The taxpayer then moved its research and spectrochemical laboratory operations which employed a relatively small staff into the Fuel Elements Building. The taxpayer continued to so use a part of the building at least until the time of the Tax Court trial in January 1969. The testimony was that the use of a part of the building for these purposes was not satisfactory. The building's specialized air supply system and large toilet areas far exceeded the taxpayer's requirements for its research and laboratory operations. The record shows that remodeling the building for general use would be a costly operation because of the specialized pyrex piping running through the walls and the design of the waste disposal system which prevents dumping wastes into the ordinary sewage system.

The taxpayer asserts that there was a sudden termination of the usefulness of the building, and it became obsolete within the taxable year by reason of the contract termination. Taxpayer in its brief says that it is " * * * claiming the reported deduction for its Fuel Elements Building as 'a reasonable allowance for obsolescence' under Section 167 of the Internal Revenue Code."

For the taxable year ended on January 3, 1965, the building had an undepreciated cost basis of $288,602.42. The

taxpayer claimed a deduction of $223,-225.42 as an extraordinary obsolescence loss for 1964. This amount was determined by figuring the number of square feet the taxpayer needed for its research and spectrochemical operations, and estimating the cost of a suitable building having a comparable amount of space. The taxpayer then deducted from this estimated cost of a research building an allowance for depreciation for the years 1961–1964 to arrive at the undepreciated cost of such a building. The estimated undepreciated cost of the hypothetical research building was then subtracted from the undepreciated cost of the Fuel Elements Building, thus arriving at $223,-225.42 as the amount claimed as an extraordinary obsolescence deduction with respect to the Fuel Elements Building for the 1964 taxable year.

The ordinary depreciation on the Fuel Elements Building for the taxable years 1961 to 1963 was computed on the basis of an estimated useful life of twenty years. This period had been agreed on between the taxpayer and the AEC for contract purposes. The taxpayer took a deduction for ordinary depreciation for the 1964 tax year on this basis.

The Commissioner sent the taxpayer a notice of deficiency for the 1964 tax year disallowing the deduction for extraordinary obsolescence and determining that the useful life of the Fuel Elements Building is forty years rather than twenty years as claimed by the taxpayer. The Tax Court affirmed the Commissioner's determinations and the taxpayer appealed these determinations to this court.

The taxpayer's claim for extraordinary obsolescence is based on section 167(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 167) which allows a depreciation deduction for ordinary wear and tear, including a reasonable allowance for obsolescence. The Tax Court determined that a deduction for extraordinary obsolescence was not available when the property was not permanently and completely withdrawn from use in the taxpayer's trade or business. It held that

the claim should be considered under section 165 of the Code. The Tax Court also found that the Fuel Elements Building was not so permanently withdrawn.

The taxpayer relies on Keller Street Development Co. v. Commissioner of Internal Revenue, 323 F.2d 166 (9th Cir.); V. Loewers Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 75 L.Ed. 588, and Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, in urging that an extraordinary obsolescence deduction can be taken under the circumstances described above.

To consider these cases, the only question decided by the Keller case was whether an obsolescence deduction could be taken if the property became obsolete within one year. The fact of obsolescence and retirement was not in issue. The question of whether such a deduction could be taken if the property were only partially retired from use was also not there presented. The decisions of the Supreme Court in V. Loewers Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 75 L.Ed. 588, and Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, are significant on the general problem, but the particular issue was not decided. While the facts in Gambrinus indicate a partial use of the brewery for the manufacture of near beer following the shutdown due to prohibition, the only issue decided in that case was that the taxpayer could take an allowance for the obsolescence of its buildings resulting from laws regarding prohibition, contrary to the position taken by the Collector. The retirement of a portion, or all, was there clearly shown and the Court said the buildings had no value after prohibition. The case shows with the loss of the business, the buildings were clearly abandoned. This fact question did not become an issue in the case. In Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, the Court was careful to point out that it had been factually determined that the obsolescence was complete, and that the

sums received from rent and from a sale were mere salvage. The beer brewing business was over, and alternative beverages had failed, and the company was dissolved. Thus again there was no question as to "retirement." The temporary partial use was again but a step in the ultimate failure of the business. The issue in the Niagara and Gambrinus cases which were decided at the same time was basically, first, whether the statute contemplated obsolescence by the imposition of prohibition, and secondly, the period over which it would be taken. Both these issues were disposed of by the Court and no discussion was had of the declining use of the buildings. Here the issue is before us directly and we hold that the record does not show a "retirement." The trial court in Burnet (Niagara Falls Brewing Co. v. Commissioner of Internal Revenue, 38 F.2d 217 (2d Cir.)) stated that abandonment is not necessary as a condition to a claim of obsolescence. The court discusses the progressive nature of obsolescence with its culmination in the property becoming obsolete. This had an important bearing on the issue there concerning the proper period and whether the end had to arrive before a claim could be made. In the case before us the taxpayer claims that the entire event took place within the taxable year, thus it asserts that there was an end of the useful life of the building to the company. It had thus already become obsolete, at least in part. This, under the regulations, is necessarily an assertion of a complete or partial "termination."

■ The testimony relating to the continued use of the Fuel Elements Building by the taxpayer demonstrates that the usefulness of the building diminished when the contract with the AEC was terminated. This showed necessarily that its value was less but the fact that the value of the building to the taxpayer diminished while the building continued in use does not provide a basis for a deduction for extraordinary obsolescence. Reporter Pub. Co. v. Commissioner of Internal Revenue, 201 F.2d 743 (10th Cir.); Detroit & Windsor Ferry Co. v. Woodworth, 115 F.2d 795 (6th Cir.), cert. den. 312 U.S. 692, 61 S.Ct. 712, 85 L.Ed. 1128.

The most important consideration is however that the record is not clear that the taxpayer had in fact reached a decision on the abandonment or indefinite nonuse of the building in question in whole or in part, despite the nature of its tax claim. The testimony of one of the taxpayer's officers demonstrated that several proposed uses for the building had been considered by management and some use for the entire building was still sought. He testified on direct examination:

"Q. Do you know whether or not there is any contemplated use for that building in the future? A. I'm sure we will attempt to use it, but I don't know what it will be, no."

Another official testified that the company was still trying to find a use for the building. The fact that no final management decision had been reached is very significant in view of the requirement of the statute, the regulations, and the theory of obsolescence.

Section 1.167(a)–9 of the Treasury Regulations recites that section 1.167(a)–8, relating to "retirements," sets out the rules "governing the allowance of a loss when the usefulness of depreciable property is suddenly terminated." These apply whether the incident is under section 167 or section 165 of the Code and it is not necessary to decide which is applicable here. Section 1.167(a)–8 provides that the term "retirement" means the permanent withdrawal of depreciable property from use in the trade or business or in the production of income. The regulation assumes that the asset has been retired from use prior to the claim of extraordinary obsolescence. A requirement for permanent withdrawal of assets from business use in order to qualify for an extraordinary obsolescence deduction was first laid down in 1919 and has continued since in similar form. The

statute has of course been amended and reenacted several times since 1919.

■ Under these circumstances the regulations acquire the force and effect of law unless they are in conflict with an express statutory provision. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; United States v. Public Service Co. of Colorado, 143 F.2d 79 (10th Cir.).

■ Since the record shows that there has not been a permanent withdrawal of the Fuel Elements Building, or any part of it, from use in the taxpayer's trade or business, the taxpayer is not entitled to a deduction for extraordinary obsolescence.

We do not decide whether under proper proof a portion of a building may be "retired" as obsolete under the regulations where but a part of it is continued in use, nor do we decide whether extraordinary obsolescence may occur within a single taxable year or whether the claim falls under section 165 or section 167.

The Tax Court found that the actual physical life of the Fuel Elements Building was well in excess of forty years and that the taxpayer was depreciating some of its other buildings of similar construction on the basis of estimated useful lives of forty to fifty years. On the basis of these findings, which are supported by the record, the Tax Court affirmed the Commissioner's determination that forty years is the useful life of the Fuel Elements Building and that this period should be used in computing ordinary depreciation.

■ The Commissioner's determination regarding the useful life of depreciable property is presumptively correct and the burden is on the taxpayer to show error. Easter v. Commissioner of Internal Revenue, 338 F.2d 968 (4th Cir.); Anson v. Commissioner of Internal Revenue, 328 F.2d 703 (10th Cir.). No such error has been shown here.

■■ The determination of a useful life of depreciable property is a factual one. This determination will not be reversed on appeal to this court unless it is clearly erroneous. House Beautiful Homes, Inc. v. Commissioner of Internal Revenue, 405 F.2d 61 (10th Cir.); Knuckles v. Commissioner of Internal Revenue, 349 F.2d 610 (10th Cir.). There was credible testimony by an Internal Revenue Service engineer to the effect that the useful life of the Fuel Elements Building was in excess of fifty years. The finding of the Tax Court was based on substantial evidence and will not be disturbed on appeal.

Affirmed.