ELVIN K. and JACQUELINE H. WHEELER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wheeler v. Commissioner
Docket No. 7424-76.
United States Tax Court
T.C. Memo 1979-333; 1979 Tax Ct. Memo LEXIS 191; 38 T.C.M. (CCH) 1287; T.C.M. (RIA) 79333; August 23, 1979, Filed *191 Petitioners were ordered by the Department of Building and Safety in August of 1973 to vacate rental apartments by Cot. 1, 1973, and make designated repairs within 3 months or demolish the buildings. Petitioners obtained an extension of time and finally demolished the buildings in December of 1974. Held, petitioners are not entitled to either an abandonment or retirement loss deduction for 1973. Elvin K. Wheeler, pro se. Marion Malone and H. Lloyd Nearing, for the respondent. *192 DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge : Respondent determined a $2,342 deficiency in petitioners' income tax for the taxable year 1973. Due to concessions by petitioners, the only issue presented for our determination is whether respondent erred in disallowing a loss claimed in 1973. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Petitioners Elvin K. Wheeler and Jacqueline H. Wheeler resided in Carson, Calif., at the time the petition herein was filed. They jointly filed their income tax return for the taxable year 1973, which return was prepared under the cash method of accounting. On November 23, 1970, petitioners acquired for $18,257.84 property consisting of four buildings described as 850-854-1/2 West 80th Street in Los Angeles, Calif., which were held by petitioners for the production of income. This property was leased by petitioners to others. In 1971 the buildings were damaged during the Sylomar earthquake. On May 10, 1973, the Department of Building and Safety for the City of *193 Los Angeles ordered petitioners to make certain repairs to the buildings. The repairs were not made and on August 29, 1973, the Department of Building and Safety informed petitioners: Pursuant to Section 91.4934 (b) of the Los Angeles Municipal Code, you are hereby ordered to vacate the buildings on or before October 1, 1973, and maintain them vacant until the required repairs are made. The buildings shall be locked and otherwise secured against ingress. This department will place "VACATED BUILDING" signs on each such building. The signs shall not be removed except by the building inspector. Each such vacated building shall be rehabilitated within three months after the date of vacation, or it shall be removed or demolished. If this rehabilition, removal or demolition has not been accomplished within the three-month period, the Superintendent of Building is empowered to have the buildings demolished with City funds and an assessment placed on the property for the cost of the expenditure plus an Administrative fee equal to 30 per cent of such cost. Petitioners were able to extend the December 1973 deadline for rehabilitation, removal, or demolition embodied in this letter *194 into 1974. Petitioners had not decided by the end of 1973 to demolish the buildings rather than make the repairs. [1] However, in December 1974 the buildings were demolished. On their 1973 income tax return petitioners claimed a casualty loss deduction of $12,119.13 because of the condemnation of the buildings in October 1973. [2] Respondent disallowed this deduction on the grounds that no loss occurred in 1973 but a deduction should be claimed as a loss due to demolition on petitioners' 1974 return. *195 OPINION The question presented in this case is whether the portion of the August 29, 1973, letter from the Department of Building and Safety ordering the vacation of tenants from petitioners' rental property was sufficient to cause the loss claimed by petitioners to be sustained in 1973.The above order was not a condemnation or taking of property. American Natural Gas Co. v. United States,150 Ct. Cl. 572, 279 F.2d 220 (1960). cert. denied 364 U.S. 900 (1960). It was simply an order proscribing the use of the property for rental purposes until certain repairs were made. Nevertheless, petitioners contend that this action resulted in the sudden and permanent withdrawal of the buildings from use in the production of income. This, petitioners claim, permits them to deduct the loss either as an abandonment loss or as a loss due to extraordinary obsolescence in 1973. Section 165(a), I.R.C. 1954, [3] provides in pertinent part: *196 (a) * * * There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 1.165-1(b), Income Tax Regs., provides that "To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year." See also sec. 1.165-1(d)(1), Income Tax Regs.
Section 1.165-2(c) of the regulations refers us to section 1.167(a)-8 of the regulations for the allowance of losses under section 165 arising from the permanent withdrawal of depreciable property from the production of income. Section 1.167(a)-8 explains, in part, that such retirement losses may result from actual physical abandonment of the property or abnormal retirement resulting from extraordinary obsolescence. [4]
*197 Whether a depreciable asset actually has been retired from use in the production of income is a question of fact. To establish that a retirement has been occasioned by abandonment the taxpayer must show an intention to abandon coupled with some act evidencing that intent in the year for which the deduction is claimed. Dezendorf v. Commissioner, 312 F.2d 95, 96 (5th Cir. 1963). Mere nonuse of the property does not constitute retirement entitling a taxpayer to a loss deduction. United California Bank v. Commissioner, 41 T.C. 437, 451-2 (1964), affd. per curiam 340 F.2d 320 (9th Cir. 1965). [5] Moreover, in order to establish a loss due to abandonment, the irrevocable intent of the taxpayer to discard the asset so that it will neither be used again by him nor be retrieved by him for sale, exchange, or other disposition must be shown. Sec. 1.167(a)-8(a)(4), Income Tax Regs.
A retirement may be abnormal if the asset *198 is withdrawn at a time earlier than customary such as when an asset has been damaged by casualty or has lost its usefulness suddenly as a result of extraordinary obsolescence. Extraordinary obsolescence requires a showing of a sudden termination of the assets' useful life which will not be provided for in the depreciation rate established for the asset. (A)-8 (A)-8 (A)-8 Sec. 1.167 (a)-8(b), Income Tax Regs.; Coors Porcelain Co. v. Commissioner, 52 T.C. 682, 692 (1969), affd. 429 F.2d 1 (10th Cir.1970). With this guidance we are not persuaded by the record that petitioners permanently retired the buildings during 1973. Although the required vacation of tenants during the latter part of 1973 clearly rendered the buildings unprofitable to petitioners for the balance of that year, our understanding of the facts is that petitioners had not decided by the end of 1973 to demolish the buildings rather than repair them. Petitioners requested and obtained from the Department of Building and Safety extensions of time to comply with the repair or demolition order running well into 1974. Moreover, the requested extensions were predicated *199 upon obtaining a loan to "comply." In the context of the case, we infer that compliance meant compliance with the required repairs and not compliance with demolition.This is borne out by petitioners' willingness to incur during 1974 the expense of obtaining an estimate of the cost of repairing damage to the buildings caused by fire and vandalism. Consequently, we believe that petitioners' final decision with regard to the disposition of the buildings was still in flux during 1973 and that the buildings had not been permanently withdrawn from the production of income during that year. As explained in section 1.165-1(d)(1), Income Tax Regs., "a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Viewing the dealings between petitioners and the Department of Building and Safety in their entirety leads us to the conclusion that the final event which occasioned the loss was petitioners' decision taken in 1974 to demolish *200 the buildings rather than go to the expense of making the repairs. Petitioners' continued reliance upon the vacation order of August 1973 to close the transaction for purposes of section 165(a) truncates the series of events and ignores the fact that no final resolution of the possibility of repairing the buildings was made until 1974. A temporary interruption in the use of property is not tantamount to the loss of the property itself. Nor is loss of potential profit, J. G. Boswell Co. v. Commissioner, 302 F. 2d 682, 686 (9th Cir. 1962), affg. 34 T.C. 539 (1960). Since these two circumstances are the only things that came about in 1973 as a result of the order, we cannot find that the buildings were abandoned in that year. For the same reasons we cannot find that the useful lives of the buildings were suddenly terminated in 1973 to support a loss deduction in that year by reason of extraordinary obsolescence. It was not until petitioners decided to demolish rather than repair the buildings that the useful lives of the buildings came to an end. [6]
*201 Accordingly, we conclude that the loss did not occur in 1973 and respondent's disallowance of the loss claimed in that year is upheld. Decision will be entered for the respondent.
Footnotes
1. Elvin Wheeler testified that he had decided to demolish the buildings in 1973. However, in 1974 further damage was done to the buildings as a result of fire and vandalism. Wheeler went to the trouble and expense of obtaining an estimate as to the cost of repairing the damage caused by the vandals. And in requesting in April 1974 an extension of time which regard to the repair or demolition order of Aug. 29, 1973, wheeler states the reason for the request as being the amount of time needed to obtain working plans and a loan to "comply." From these actions we infer that petitioners had not reached a definite decision with regard to repairing the earthquake damage.↩
2. On their 1974 income tax return petitioners claimed a casualty loss of $8,157 because of the demolition of the property in December 1974.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated.↩
4. For a discussion of whether a deduction for abnormal retirement or extraordinary obsolescence is deductible under sec. 165 or sec. 167, see Coors Porcelain Co. v. Commissioner, 52 T.C. 682, 688-9 (1969), affd. 429 F.2d 1↩ (10th Cir. 1970).
5. Cf. Golden Gate Disposal Co. v. Commissioner, T.C. Memo. 1979-199↩.
6. Compare Hanover v. Commissioner↩, a Memorandum Opinion of this Court released this same day.