SAMUEL R. DELL and ELEANOR DELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dell v. Commissioner
Docket No. 29871-82.
United States Tax Court
T.C. Memo 1985-246; 1985 Tax Ct. Memo LEXIS 387; 49 T.C.M. (CCH) 1538; T.C.M. (RIA) 85246; May 23, 1985. *387 Held: Petitioners' Motion for Further Trial is denied as untimely. Petitioners may not raise a new issue in the context of Rule 155 computations. Gerald W. Dibble and David H. Kernan, for the petitioners. Edward D. Fickess and John D. Steele, Jr., for the respondent. WHITAKER
SUPPLEMENTAL MEMORANDUM OPINION WHITAKER, Judge: On October 17, 1984, the *388 Court filed its opinion in this case (T.C. Memo. 1984-556) [1] holding that: (1) Petitioners' cattle breeding business from 1973 through May 1978 was engaged in for profit and all losses generated by said business are fully deductible; and, (2) petitioners' cattle breeding activities commencing in June 1978 and continuing through 1980 were not engaged in for profit and deduction of expenses of said activities are limited in accord with section 183. [2] A second issue, initially raised by petitioners on brief, of whether net farm losses for 1978 should be offset by income from the May 1978 liquidation cattle sale was also resolved. The opinion further provided that decisions would be entered under Rule 155. As the parties were unable to agree, each filed a computation for entry of decision. *389 The most significant computational difference between the parties is petitioners' claimed deduction of $30,847.00 in 1978 for what they characterize as "abnormal retirement losses." [3] Petitioners seek to deduct the difference between their adjusted basis and the greater of the fair market value or the salvage value of depreciable assets used in their cattle breeding business and, after May 1978, converted to personal use. [4] Respondent objects that this issue was not raised in the pleadings, briefs or during trial and cannot be raised for the first time in the context of a Rule 155 computation. Respondent further asserts that, if considered on the merits, petitioners' claimed abnormal retirement loss deduction ("retirement deduction") should be denied. To aid the Court, the parties were requested to submit briefs of their respective positions on both the procedural and substantive aspects of the retirement deduction issue. In response to this request, on February 4, 1985, petitioners filed a Motion for Further Trial [5] with supporting brief and, on March 11, 1985, respondent filed a brief in opposition to petitioners' motion. *390 We initially address the procedural aspect--i.e., whether petitioners may raise the retirement deduction issue after an opinion has been entered. It is clear that a Rule 155 proceeding is strictly limited to computation of the deficiency, liability or overpayment and may not be used to raise a new issue. Rule 155(c); [6]Harwood v. Commissioner,83 T.C. 692 (1984); Cloes v. Commissioner,79 T.C. 933 (1982). [7] Petitioners do not deny they are attempting to raise a new issue. They assert, however, that they could not, or reasonably should not, have raised the retirement deduction issue earlier. *391 Initially, petitioners argue that, until the Court rendered its opinion, the retirement deduction issue did not exist. We disagree. This issue was not created by our opinion. Rather, as is frequently the case, the need to resolve this issue only arose when, and because, we determined that petitioners' cattle breeding business terminated in May 1978. Petitioners advocated analyzing their cattle breeding activities as two separate "businesses"--the first ending in May 1978 and the second commencing in June 1978 and continuing thereafter. Having proposed this analytical approach, which was in fact used by the Court, they should have considered and addressed all issues which would arise as a consequence of our determination that only one of the two "businesses" was entered into and conducted for profit. According to respondent, the retirement deduction issue was "freely discussed" by the parties during pre-trial conferences. We cannot comprehend how the parties could discuss an issue before trial if, as petitioners assert, it did not exist at that time. Petitioners next assert that, even if foreseeable, the retirement deduction issue should be considered in the context of Rule *392 155 computations since it would have been unreasonable to submit arguments and proofs on this issue earlier. They argue that, until the Court rendered its opinion, it was possible that the need to address the issue might never arise. [8] If the Court agreed with petitioners that their cattle breeding activities were engaged in for profit through 1980, proof or arguments on the retirement deduction issue would be irrelevant. [9] Petitioners' position, if adopted, potentially would require a series of "mini-trials," each deciding only one narrow issue, in each case before the Court. The need for, and scope of, each successive "trial" would depend on the Court's preceding determinations in a given case. This position is diametrically opposed to the Court's practice of avoiding piecemeal and protracted litigation by requiring that all issues, including hypothetical and/or alternative arguments, be advanced and resolved in one proceeding. As we held in Cloes v. Commissioner,supra at 937: Proper judicial administration demands that there be an end to litigation and that bifurcated trials be avoided. Petitioners could readily have pleaded [the retirement deduction *393 issue] as an alternative position and presented the necessary evidence at the trial of this case. It is no answer to say that the need to follow such a course could not have been ascertained until the Court had determined [whether petitioners' cattle breeding activities were engaged in for profit] for the years involved. See also, Markwardt v. Commissioner,64 T.C. 989, 998 (1975); Estate of Kurihara v. Commissioner,T.C. Memo. 1985-150; Rule 31(c). *394 The final argument advanced by petitioners in support of their request for leave to raise the retirement deduction issue is that granting the request would not prejudice respondent or compromise the Court's policy of resolving cases with maximum economy of time and effort. Petitioners assert that the Court can determine if they are entitled to this deduction on the current record. They concede, however, that, were the Court to determine they are entitled to a retirement deduction, the record would have to be reopened to receive evidence of the fair market and salvage values of the business assets converted to personal use. The bifurcated procedure proposed by petitioners cannot be justified on the basis of judicial economy. Our holding in Pappas v. Commissioner,T.C. Memo. 1975-321 is particularly applicable: * * * [taxpayer] was given full and adequate opportunity to plead all grounds for relief and to present all pertinent evidence. No special circumstances have been shown to explain [taxpayer's] failure to present the issues he now raises for decision or to offer the available evidence on those issues, and no compelling reason has been advanced to justify *395 the time and expense required on the part of respondent and the Court to reopen the record at this point and conduct a second trial. [34 T.C.M. at 1399; 44 P-H Memo T.C. par. 75,321 at 1368-75.] Based on the foregoing, we conclude that petitioners' Motion for Further Trial should be denied. Beyond this procedural reason for denying the Motion, we also would hold, on substantive grounds, that petitioners are not entitled to a retirement deduction. Deductions are a matter of legislative grace, and petitioners must satisfy the specific requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioners bear the burden of proving their entitlement to the retirement deduction they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). They have failed to carry their burden in this case. The parties agree that any allowable retirement deduction must be claimed under section 165. The parties further agree that section 1.167(a)-8, Income Tax Regs. *396 , is the applicable regulation to consider in determining petitioners' entitlement to a retirement deduction. Section 1.165-2(c), Income Tax Regs.; Coors Porcelain Co. v. Commissioner,52 T.C. 682, 692 (1969), affd. 429 F.2d 1 (10th Cir. 1970). [10] This regulation provides that losses may be deductible when depreciable property is "retired," i.e., permanently withdrawn from use in a trade or business or in the production of income. Withdrawal may be accomplished by sale, exchange, actual physical abandonment or by being permanently retired from use. As applied to this case, to constitute a permanent retirement, the retirement must be "abnormal." Section 1.167(a)-8(a), Income Tax Regs. As provided by section 1.167(a)-8(b), Income Tax Regs.: * * * In general, a retirement shall be considered a normal retirement unless the taxpayer can show that the withdrawal of the asset was due to a cause not contemplated in setting the applicable depreciation rate. For example, a retirement *397 is considered normal if made within the range of years taken into consideration in fixing the depreciation rate and if the asset has reached a condition at which, in the normal course of events, the taxpayer customarily retires similar assets from use in his business. On the other hand, a retirement may be abnormal if the asset is withdrawn at an earlier time or under other circumstances, as, for example, when the asset has been damaged by casualty or has lost its usefulness suddenly as the result of extraordinary obsolescence. Mere nonuse of property in a trade or business does not constitute permanent retirement. Wheeler v. Commissioner,T.C. Memo. 1979-333. Petitioners correctly state that had *398 they sold, exchanged or abandoned the capital assets used in their cattle business, they would have been entitled to recover their undepreciated investment in these assets. They further recognize that, unless they resume use of these assets in a trade or business, they may never recoup their undepreciated investment. Petitioners argue that, therefore, they should be allowed to recover their investment since they have suffered an economic loss in converting these assets to their personal use identical to the loss they would have suffered on sale or abandonment of the assets. Petitioners' entitlement to recover their undepreciated investment must be determined on the basis of the course of action they chose to implement, i.e., conversion to personal use, not the consequences of other courses open to them. Don E. Williams Co. v. Commissioner,429 U.S. 569, 579 (1977); Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134, 149 (1974); Brown v. Commissioner,706 F.2d 755, 756 (6th Cir. 1983), affg. a Memorandum Opinion of this Court. To obtain a retirement deduction, petitioners seek to demonstrate that their *399 "withdrawal" of capital assets from use in a business venture constituted an abnormal, i.e., permanent, retirement within the meaning of section 1.167(a)-8(a) and (b), Income Tax Regs.[11] They argue that: (1) The property was withdrawn from use in their business "for a reason not contemplated in setting the applicable depreciation rates, to wit: the termination of their business to avoid further losses"; (2) "Outside of cattle breeding or some other livestock activity, the property has little or no use for petitioners"; (3) "[f]rom an economic point of view, [their] capital investment in the property was lost just as the money expended on feed and other current expense items was lost"; and (4) resumption of use of these assets by petitioners in a trade or business is theoretical and speculative and "given the time-value of money and recent interest rates, depreciation deductions allowed at some uncertain time in the future have substantially less real economic value than petitioners' unrecovered investment." Taken together, these facts do not constitute a permanent retirement due to sudden loss of usefulness as the result of extraordinary obsolescence. While petitioners' cattle *400 breeding losses were not contemplated in setting the applicable depreciation rates, such losses are not commensurate with a casualty or loss of usefulness. Similarly, while petitioners may have no business use for a tractor, barn or other farm equipment, these assets are currently used by petitioners in their personal pursuits and would be useful in a future business conducted by petitioners. We also find unpersuasive their argument that their losses on these assets are analogous to expenditures for feed and other current expenses. This analogy ignores a critical difference--once "consumed" current expense items such as feed, utilities and labor cannot be "used" again or sold. The farm equipment and other capital assets for which petitioners seek a retirement deduction are not "lost" through use. They may be successively sold and/or repeatedly used as evidenced by their current use in petitioners' personal pursuits. The most critical fact undercutting petitioners' argument, however, is their recognition that they could resume cattle breeding as a business and use the assets for which they seek a retirement deduction in said business. As we found in our opinion, petitioners intend *401 to build a herd of approximately 200 head and purchased 300 additional acres of land in 1980 for future use in their cattle operation. Petitioners have retained all of the capital assets, with the exception of the purebred herd, used in their cattle business. The potential resumption of use of these assets in a trade or business precludes allowance of a deduction for "abnormal retirement." We agree with respondent that petitioners are not entitled to a retirement deduction as there has been no retirement or loss of usefulness and no showing that the assets will not be used in a trade or business by petitioners, or others, in the future. Based upon the foregoing, petitioners' Motion for Further Trial will be denied. In addition, the parties should submit a revised *402 agreed computation and proposed decision under Rule 155. [12]
An appropriate Order and Decision will be entered under Rule 155.
Footnotes
1. The opinion decided all issues raised in two separate petitions: Docket No. 11187-81 for the 1977 tax year and docket No. 29871-82 for the years 1978 through 1980. By Stipulation dated December 12, 1984, the parties agreed to the amount of deficiency in income taxes due from petitioners for their 1977 taxable year. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The parties' computations also differed in their treatment of depreciation of a house and barn apartment which had been used in petitioners' cattle breeding business and the allocation of operating expenses in 1978 between business and nonbusiness cattle activities. Since the parties have apparently reached an accord on these items, we need not address them herein. ↩
4. These assets include blacktop, a barn, water system, spreader tractor, portable corral, fence, corn crib, elevator, and unspecified equipment. In their Rule 155↩ computation, petitioners used a salvage value deemed to be 10 percent of cost. 5. To clarify, although styled a Motion for Further Trial, petitioners', Motion was filed in response to a specific request of the Court and was not made pursuant to Rule 161 (Motion for Reconsideration of Findings or Opinion) or Rule 41 (Amended and Supplemental Pleadings).↩
6. Rule 155(c) reads as follows: (c) Limit on Argument: Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration.↩
7. See also Lemler v. Commissioner,T.C. Memo. 1980-507; Silverton v. Commissioner,T.C. Memo. 1978-433, affd. without published opinion, 647 F.2d 172↩ (9th Cir. 1981).
8. This does not explain why petitioners did not raise this issue under Rule 161 before incorporating their position in their Rule 155↩ computation. 9. In conjunction with this argument petitioners assert that it is doubtful they could have presented evidence of the fair market value of business assets at retirement since, to do so, they would have had to "divine" the precise date the Court would hold the business phase had terminated. We find this argument unpersuasive. Both the parties, and the Court, recognized that one business, or clearly discernable phase of petitioners' activities, terminated in May 1978. Neither the Court nor the parties considered it necessary to determine the the precise day in May of the termination.↩
10. Petitioners argue, however, that the reasoning of sec. 1.165-2, Income Tax Regs.↩, should apply herein. We disagree. Instances involving nondepreciable or depreciable property have been separately, and specifically, addressed in the regulations. Only those regulations dealing explicitly with depreciable property are applicable to this case.
11. We give no weight to petitioners statement that, in seeking this deduction "no suggestion is intended that such loss must qualify as an abnormal retirement loss, within the meaning of sec. 1.167(a)-8(a) of the Income Tax Regs.↩, in order for such loss to be deductible." If petitioners do not qualify for the deduction they seek under this regulation, they are entitled to no deduction.
12. If the parties are unable to agree on a revised computation and decision, they should submit their separate proposals.↩